IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| Mitch R. Kramer, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER DENYING MOTION TO** |
| vs. | ) | **DISMISS** |
| | ) | |
| CHS, Inc. d/b/a Northern Plains Cooperative, | ) | Case No.: 1-17-cv-270 |
| | ) | |
| Defendant. | ) | |

Before the court is a Motion to Dismiss filed by Defendant CHS, Inc., d/b/a Northern Plains Cooperative ("CHS"). (Doc. No. 3). CHS brings this motion pursuant to Fed. R. Civ. P. 12(b)(6), arguing the complaint in this matter fails to state a claim upon which relief can be granted. Plaintiff Mitch Kramer opposes the motion. (Doc. No. 10).

## I.  BACKGROUND

### A.  Kramer's state-court complaint

The following is a summary of the allegations contained in Kramer's complaint that he filed in state court. (Doc. No. 1-2). As discussed later, the court must accept all factual allegations as true for purposes of CHS's motion to dismiss.

Kramer is a farmer in south-central North Dakota, where CHS provides agricultural products and services. Kramer alleges that, on January 29, 2016, he asked CHS for a line of credit for $250,000 pursuant to CHS's Premier Grower Program, which provides loans to farmers to purchase agricultural supplies from CHS.[1] (Doc. No. 4-2). According to Kramer this was consistent with

---

[1]The court recognizes some problems may exist regarding whether Kramer named the right defendant in this action. According to an affidavit submitted by CHS, CHS is not responsible for the Premier Grower Program. (Doc. No. 1-4). Rather, CHS Capital, LLC, an independent company whose sole member is CHS, administers that program. Accordingly, an applicant approved under the Premier Grower Program receives credit from CHS Capital, which the

parties' relationship in past years when CHS had similarly extended credit to Kramer.

According to Kramer, when he went to CHS to obtain the line of credit, he signed "documentation" for the extension of the line of credit consistent with what had been done in the past and was given verbal assurances that his contract was approved and the documentation he signed was sufficient to establish an agreement on the part of CHS to extend the line of credit.

While Kramer did not attach to his complaint, a copy of the "documentation," he did: (1) identify CHS's credit program by name, *i.e.*, the Premier Grower Program; (2) recite the amount of credit he claims he was approved for, and (3) state that the agreement was essentially the same as in prior years. Also, while Kramer did not identify by name the person who he alleged approved the "documentation," he did refer to the person by his position, *i.e.*, the credit manager who had provided him the documentation, and also referred to the person as the credit manager who had been terminated by CHS.

According to Kramer, CHS allowed him to use approximately $120,000 of credit to finance his farming operations through approximately the second week of May, 2016. Then, in early June, 2016, Kramer alleges that he sought to purchase further supplies, and, at that time, CHS informed Kramer it would no longer finance his farming operations and that the credit manager who had approved his line of credit had been terminated.

Kramer alleges he was not able to secure any other operating loan for the remainder of the growing season. As a result of not being able to finance necessary chemicals, applications, fertilizer,

---

farmer then uses for purchases from CHS. Here, Kramer's complaint largely turns on the application he submitted to CHS Capital. However, his complaint also concerns conduct on the part of CHS and/or individuals within its employ. Thus, a question remains whether CHS, CHS Capital, or both should be named as defendants in this matter. For the purposes of this motion, the court will simply treat CHS and CHS Capital as one-in-the-same.

and other supplies, Kramer alleges he had drastically reduced crop yields in 2016 and suffered damages in the amount of $605,781.00.

The only claim for relief that Kramer sets forth in his complaint is one for breach of contract, express or implied. He has not so far pled tort or fraud as a standalone claim for relief.

**B.     CHS's motion to dismiss and its tender of an exhibit**

CHS contends in its motion to dismiss that Kramer's complaint fails to state a claim upon which relief can be granted because it fails to allege there was a written agreement that was signed by CHS that would be enforceable against it. In making this argument, CHS points to North Dakota's statute of frauds which, in relevant part, requires that, for agreements promising to extend credit in the aggregate amount of $25,000 or greater, the agreement must be in writing and signed by the party to be charged. CHS then submits with its motion a two-page document bearing Kramer's signature at the bottom of the first page. This two-page document is entitled "PREMIER GROWER PROGRAM" - the same program name referenced in Kramer's complaint. CHS contends that this two-page document must have been the "documentation" alluded to in the complaint, that it is merely a "credit application," and that it does not suffice to satisfy North Dakota's statute of fraud because it was not executed by CHS.

While it may be that the two-page document submitted by CHS is the credit application, on its face it appears to also do double duty as the contact for the extension of credit upon acceptance by CHS in that it contains all of the terms that one would expect in such an agreement, including the amount of credit to be extended, the interest rate, terms of repayment, etc. Further, it includes specific language of contract, including, for example, the words on the first page: "You further acknowledge that you have read, understand, and accept the terms of this agreement, included on

page two of the application."

In fact, the two-page document includes even more. There is embedded within its language the terms of a personal guaranty of payment that is granted by each of the applicants upon their signature  In short, the only thing missing to complete the agreement is a place for CHS to sign - if CHS had intended acceptance to be by signature as opposed to some other manner of acceptance, which is not at all clear.

Notably, there is at the top of page 1 a box in small type as follows:

> For Office Use Only
> Patron # _____
> Credit Limit _____
> Approval _____

The copy provided by CHS does not have anything filled in within this box.

## II. DISCUSSION

### A. Standard

The standard for whether to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is well-established. The complaint must state enough to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). It also must state facts sufficient to satisfy the "plausibility standard" for stating a cognizable claim as established in Twombly and further amplified by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678-84 (2009) ("Iqbal"). In making these evaluations, the court must accept all factual allegations set forth in the complaint as true. Twombly, 550 U.S. 544, 556 n.3 (2007).

While, for reasons discussed later, the court concludes the Iqbal/Twombly pleading standard has been satisfied in this case, the court would give Kramer an opportunity to tender an amended complaint to try meet it if there was any doubt.  This is because his complaint was filed in state court and removed here by CHS.  To this court's knowledge, the North Dakota Supreme Court has not embraced the Iqbal/Twombly standard, and it would be unfair to subject the complaint to an arguably higher pleading standard without affording an opportunity to amend.  See, e.g., Limberg v. Sanford Medical Center Fargo, 2016 ND 140, ¶ 7, 881 N.W.2d 658 (stating that a motion to dismiss under N.D. R. Civ. P. 12(b)(6) will not be granted unless "it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted" and that an order granting a motion to dismiss will be affirmed only if the court "cannot discern a *potential for proof* to support it.") (italics added and internal quotations and citing authority omitted).

**B.    The motion to dismiss lacks merit**

The court concludes that the complaint alleges sufficient facts to make out a plausible claim for breach of contract, express or implied, but, even if it did not, CHS by providing the exhibit has cured any deficiency.  As for CHS's contention that there is nothing before the court which indicates that North Dakota's statute of frauds codified at N.D.C.C. § 9-06-04 was complied with,  Kramer has pled enough to establish the existence of a contract and CHS's recognition of it in terms of advancing credit.  While CHS contends that it advanced the credit not because there was a binding agreement to advance credit up to $250,000 but for other reasons, we are not at the proof stage yet and the court must construe the allegations of the complaint in Kramer's favor.

And, while CHS has tendered the two-page document, this court has no way of knowing at this point (and probably neither does Kramer) that there is not another version of this two-page

document somewhere within CHS that might have been initialed or otherwise signed off on, which, if so, would likely satisfy the "subscription" requirement of § 9-06-04. Kramer should be allowed the opportunity for discovery, including the opportunity of seeking any other versions of the two-page document that may be in the possession of CHS or its related entities along with any other documents that may be associated with the two-page document that might contain any signature, mark, or other writing that arguably might constitute a "subscription" and that, if there is no such document in existence in this case, obtain CHS's statement under oath to that effect.[2]

In addition, even if there is no other document that satisfies § 9-06-04, assuming it to be applicable, there may be exceptions or defenses to CHS's assertion of the statute. For example, Kramer in his briefing in opposition to the motion cites to North Dakota's statutory "fraud exception," which provides:

> When a contract which is required by law to be in writing is prevented from being put into writing by the fraud of a party thereto, any other party who by such fraud is led to believe that it is in writing and acts upon such belief to that party's prejudice may enforce it against the fraudulent party.

N.D.C.C. § 9-06-03. The court doubts that Kramer was required to plead facts in his complaint in anticipation of CHS's assertion of the statute of frauds defense, but, even if he was, the court concludes there are sufficient allegations in the complaint to invoke the statute.

Likewise, the same is true for the possibility of Kramer being able to rely upon "part performance" as taking the alleged agreement out of the purview of the statute of frauds since the complaint does allege part performance on the part of CHS. As to this point, it appears to be an open

---

[2] While CHS presents the court with the two-page document that it states is merely the credit application, it has not presented the court with a copy of the document that would actually be executed by CHS if it accepted the credit application. Surely, there must be some document that CHS typically uses that sets forth its written "subscription" and that it does not engage in a practice of not signing any document.

question in North Dakota whether partial performance of a contract to extend credit not complying with N.D.C.C. § 9-06-04(4) will take the contract out of the statute's purview. <u>Bloomquist v. Goose River Bank</u>, 2013 ND 154, ¶ 13, 836 N.W.2d 450 (stating it "is uncertain whether the doctrine of partial performance may be used to remove an oral agreement to loan more than $25,000 from the statute of frauds under N.D.C.C. § 9–06–04(4)."). What the North Dakota Supreme Court has said to this point is that, if it does, partial performance "must establish part performance that is not only consistent with, but that is consistent <u>only</u> with, the existence of the alleged oral contract." <u>Id.</u> at ¶ 13 (quoting <u>Kohanowski v. Burkhardt</u>, 2012 ND 1999, ¶ 16, 821 N.W.2d 740) (emphasis in original).

In this case, there may be several ways in which Kramer may be able to establish a jury question as to whether any part performance on the part of CHS was consistent only with the existence of a contract. For example, Kramer may be able to establish there was no other agreement in place for the credit that was extended and that CHS's routine practice was not to extend credit unless there was an agreement in place. Also, Kramer may be able to establish that CHS calculated on its books, or even billed Kramer for, interest at the rate set forth in the two-page document submitted by CHS. In the absence of some other agreement for charging interest at that rate, an argument could be made that the charging of the interest at the rate set forth in the two-page document is only consistent with that agreement having been reached since interest rate on contracts in North Dakota is 6% per annum in the absence of an agreement providing otherwise. N.D.C.C. § 47-14-05.

Also, <u>Bloomquist</u> was arguably more concerned about part performance taking what otherwise was an oral agreement out of the statute of frauds by part performance. What may be the

situation here is that the only noncompliance with § 9–06–04 was the lack of a written "subscription" on the part CHS. That may present different and unique arguments with respect to not only part performance taking this out of the statute of frauds, but also the part performance constituting a waiver of the statute's requirement for signature or along with CHS's acceptance of Kramer's business being a basis for equitable estoppel. See, e.g., Constellation Development, LLC v. Western Trust Co., 2016 ND 141, 882 N.W.2d 238 ("We have often stated that part performance of an oral contract, promissory estoppel, or equitable estoppel may bar the assertion of the statute of frauds under N.D.C.C. § 9–06–04 if, in fact, there is an oral agreement between the parties."); Knorr v. Norberg, 2015 ND 284, ¶ 9, 872 N.W.2d 323 ("Promissory estoppel, however, may bar the assertion of the statute of frauds if there is an oral agreement between the parties.") (citing Cooke v. Blood Systems, Inc., 320 N.W.2d 124, 127 (N.D.1982)); N.D.C.C. § 31-11-06 (estoppel by declaration, act, or omission).

## III. CONCLUSION

Kramer has stated a plausible claim as to the existence of a contract, express or implied, between the parties obligating CHS to extend him credit in the amount of $250,000. Further, to the extent that Kramer may have been obligated to affirmatively plead facts sufficient to overcome a defense of statute of frauds, which the court doubts, he has done that. Consequently, the court **DENIES** CHS's Motion to Dismiss. (Doc. No. 3). CHS is directed to answer the complaint within fourteen (14) days.

**IT IS SO ORDERED.**

Dated this 9th day of April, 2018.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court